1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
7                                   AT TACOMA

8    UNITED FINANCIAL CASUALTY CO.,          Case No. 3:24-cv-05279-TMC

9                          Plaintiff,        ORDER ON CROSS-MOTIONS FOR
                                             PARTIAL SUMMARY JUDGMENT AND
10          v.                               DEFAULT JUDGMENT

11   ROADMAX INC ET AL.,

12                         Defendant.

13

14                          **I.    INTRODUCTION**

15          This matter comes before the Court on Plaintiff United Financial Casualty Company's

16   (UFCC) Motion for Partial Summary Judgment and Default Judgment and Defendants Roadmax

17   Inc. and Gregory Grigoryan's Cross-Motion for Partial Summary Judgment. Dkt. 23; Dkt. 26.

18   Defendant Gregory Grigoryan owns and operates Defendant Roadmax Inc., a transportation

19   company. Grigoryan and Roadmax contracted with Defendant Amas Trucking LLC to transport

20   a shipment of dog food from Oregon to the Midwest. Amas then hired Defendant Abdisalan

21   Sharif to pick up and drive the food. Though Sharif was directed to store the food at a specific

22   temperature to prevent spoilage, he failed to do so, and the food was ruined on arrival. Amas was

23   insured by Plaintiff UFCC. Defendants asked UFCC to cover the loss for the spoiled food. But

24   UFCC refused, citing a provision in the policy it alleges bars coverage. After extensive back and

forth between the parties, UFCC filed this suit for declaratory relief, asking the Court to decide the applicability of the policy to the claimed loss.

UFCC now seeks Default Judgment against Defendants Sharif and Amas and Partial Summary Judgment against Defendants Roadmax and Grigoryan on the issue of coverage for the claims arising out of the loss. Defendants Roadmax and Grigoryan have cross-moved for partial Summary Judgment, asking the Court find that there is coverage for the loss. The Court has considered the briefs filed in support of and in opposition to the motion and the underlying record. For the reasons set forth below, the Court DENIES Plaintiff UFCC's Motion for Partial Summary Judgment and Default Judgment and GRANTS Defendants' Cross-Motion for Partial Summary Judgment. Dkt. 23; Dkt. 26.

## II.    BACKGROUND

This case arises out of an insurance coverage dispute between Plaintiff UFCC and Defendants Roadmax Inc., Gregory Grigoryan, Amas Trucking LLC, and Abdisalan Sharif. *See generally* Dkt. 1; Dkt. 11 ¶ 10.3.[1] The facts relevant to coverage are undisputed by the parties. In December 2022, Defendant Roadmax contracted with H&M Bay to transport perishable dog food from Oregon to the Midwest. Dkt. 11 ¶ 10.8; Dkt. 25-2 at 2–3; Dkt. 27 ¶ 5. Roadmax then subcontracted with Defendant Amas to transport the dog food. Dkt. 23 at 4; Dkt. 25-4 at 2–3. Amas assigned the job to driver Defendant Abdisalan Sharif. *Id.*

Sharif picked up the dog food in Oregon. Dkt. 25-4 at 2; Dkt. 23 at 4. Sharif received specific instructions for the transportation of the food. Dkt. 25-4 at 4. To prevent spoilage, the food was to be kept at a temperature between zero and negative ten degrees Fahrenheit. *Id.*;

---

[1] UFCC is a wholly owned subsidiary of Progressive Commercial Holdings, Inc. Dkt. 4 at 1. At times throughout the briefing, Defendants call UFCC by its parent company's name, Progressive. For clarity, the Court refers to UFCC throughout and has altered citations as needed. *Id.*

Dkt. 27-9. Sharif instead set the temperature of the refrigeration unit to thirty degrees. *See generally* Dkt. 25-1. As a result, the food spoiled during the journey. Dkt. 25-3 at 2; Dkt. 23 at 5. Upon arrival in Michigan, H&M Bay rejected the spoiled food. Dkt. 25-3 at 2. Roadmax was liable to H&M Bay for the full cost of the lost food: $56,834.50. Dkt. 27-8 at 2.

At the time, Amas was insured by UFCC. Dkt. 25-5 at 2. Amas held a "Commercial Auto Insurance Policy" with UFCC from July 2022 through July 2023. *Id.*

The policy contains two relevant additional insured endorsements: a "Motor Truck Cargo Legal Liability Coverage Endorsement" and a "Refrigeration Breakdown Coverage Endorsement." *Id.* at 24, 30, 47. The first covers "perils": "external risks of direct physical loss to covered property or business equipment." *Id.* at 31. This includes damage to property a commercial trucking company may be transporting. *Id.* at 30. The policy insures against all external risks, except those exempt under the policy's list of "excluded perils." *Id.* at 31.

The Motor Truck Cargo Liability Endorsement includes an excluded peril involving refrigerated materials. *Id.* at 32. But this excluded peril is modified by the Refrigeration Breakdown Coverage Endorsement. *Id.* at 32, 47–48; Dkt. 29 at 3–4. The Refrigeration Breakdown Coverage Endorsement is an additional policy purchased by the insured. Dkt. 23 at 7; Dkt. 25-5 at 47. It covers "legal liability for direct physical loss to covered property, caused by spoilage or change in temperature, resulting directly from the sudden and accidental breakdown of refrigeration . . . on an insured auto." *Id.* at 47.

The Refrigeration Breakdown Coverage Endorsement amends the Motor Truck Cargo Liability Endorsement's refrigeration exclusion. *Id.* It replaces the original exclusion with a slightly modified excluded peril. *Id.* at 47–48. The replacement, excluded peril "g", creates an exclusion for loss caused by "[h]umidity, dampness, dryness, or changes in or extremes of

temperature, other than such loss caused by the sudden and accidental breakdown of refrigeration or heating units on the insured auto[.]" *Id.*

Roadmax—who was liable for the full cost of the lost dog food—sought coverage for its losses from UFCC. Dkt. 26 at 8; *see generally* Dkt. 27-13. UFCC denied the request. UFCC advised Defendants that it was refusing coverage because the driver set the unit to the wrong temperature. Dkt. 26 at 8; Dkt. 27-13 at 50. UFCC explained that it did not have "coverage for driver error unfortunately." Dkt. 27-13 at 50. Shortly after, Roadmax submitted a formal claim for coverage under the UFCC policy for the spoiled dog food. *See generally* Dkt. 25-6.

In March 2023, UFCC responded, denying the claim. Dkt. 28-2. The insurer's reasoning changed. *Id.* UFCC issued a "supplemental disclaimer" explaining that it was denying coverage because "changes in temperature that cause a shipment to become damaged, that are not the result of a refrigerate unit breakdown, are not covered." *Id.* at 2. UFCC pointed Defendants to the Refrigeration Breakdown Endorsement. *Id.* Defendants responded, requesting that UFCC reconsider its determination. Dkt. 25-8. UFCC again denied the claim, repeating that the Refrigeration Breakdown Endorsement precluded coverage. Dkt. 25-9 at 5–6.

On February 21, 2024, after months of unsuccessful negotiations, Roadmax sent an Insurance Fair Conduct Act (IFCA) Notice to UFCC. Dkt. 28-6. The notice detailed the back and forth between the two companies, as Roadmax continued to appeal UFCC's denials. *Id.* at 2–5. UFCC denied any wrongdoing and disclaimed any violations of IFCA. Dkt. 28-7 at 3–4.

On April 11, 2024, UFCC filed a complaint with this Court requesting declaratory relief against all Defendants. *See generally* Dkt. 1. UFCC sought "a determination that it does not owe a duty to defend or indemnify" Defendants under the policy. *Id.* at 1. On May 24, 2024, Defendants Roadmax and Grigoryan submitted a counterclaim against UFCC. Dkt. 11. Soon after, UFCC filed for default against Defendant Sharif who had failed to appear. Dkt. 13. The

Court entered default. Dkt. 15. UFCC filed for default against Amas in July 2024 for the same reason. Dkt. 18. The clerk entered default against Amas on July 26. Dkt. 21.

On October 10, 2024, UFCC moved for partial summary judgment, asking the Court to decide whether the policy covered Defendants' losses. Dkt. 23. UFCC also moved for default judgment against Defendants Sharif and Amas. *Id.* In response, Defendants Roadmax and Grigoryan cross-moved for partial summary judgment, asking that the Court find that there is coverage for the subject loss. Dkt. 26 at 3. Defendants Roadmax and Grigoryan also objected to UFCC's request for declaratory relief against Defendant Amas. *Id.* at 2. The motions are ripe for the Court's determination.

### III.     LEGAL STANDARDS

#### A.     Jurisdiction and Applicable Law

Before addressing each motion's merits, the Court must confirm that it has subject matter jurisdiction over the parties' claims. *See United Invs. Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 966–67 (9th Cir. 2004) ("[A] district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments. . . ." and it generally has an obligation to establish subject matter jurisdiction "*sua sponte*, whether the parties raised the issue or not").

"[T]he burden of establishing [jurisdiction] rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). At summary judgment, the allegations in the complaint must be supported by evidence in the record. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). UFCC alleges in its complaint that the Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(2). Dkt. 1 ¶ 3.1.

The Court has diversity jurisdiction over this action because the amount in controversy exceeds $75,000 and the opposing parties are citizens of different states. Plaintiff UFCC has filed this declaratory action to determine whether it must insure Defendants for a $56,834.50 loss.

Dkt. 1 ¶ 4.10. UFCC notes that Roadmax has also made a claim for an additional $8,000 for its delivery contract fee. *Id.* UFCC's complaint thus only asserts an amount in controversy of $64,834.50. Without more, the Court would not have jurisdiction.

But Defendants Roadmax and Grigoryan's counterclaims bring the case within the Court's jurisdiction. In their counterclaim, Roadmax and Grigoryan similarly claim about $65,000 in losses. Dkt. 11 ¶¶ 10.8, 10.23. They also maintain that they are owed non-economic damages and treble damages under the Consumer Protection Act and IFCA. *Id.* at 28. Such damages would sufficiently increase the amount in controversy. *See* Dkt. 35 at 3 ("Roadmax and Grigoryan are seeking to treble that amount under IFCA. . . . based on the IFCA claim alone, the amount in controversy in this matter exceeds the $75,000 jurisdictional threshold.").

Still, whether a counterclaim may be used to reach the amount in controversy varies by circuit. § 3709.5 Aggregation of Claims—Effect of Counterclaims, Cross-Claims, and Third-Party Claims, 14B Fed. Prac. & Proc. Juris. § 3709.5 (5th ed.) ("The extent to which a counterclaim, cross-claim, or third-party claim can be considered in determining the amount in controversy never has been resolved definitively."). The Ninth Circuit has held that jurisdiction arises only from the face of a well-pleaded complaint, not the defenses or counterclaims alleged by a defendant. *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 821–22 (9th Cir. 1985); *Assocs. Nat. Bank (Delaware) v. Erum*, 80 F. App'x 609, 610 (9th Cir. 2003). There is, however, an exception. The Ninth Circuit has also held that for cases that are originally filed in federal court, when the plaintiff's claim is less than the jurisdictional minimum, and where defendants have not objected to the district court's exercise of jurisdiction, compulsory counterclaims can be used to satisfy the amount in controversy. *Fenton v. Freedman*, 748 F.2d 1358, 1359 (9th Cir. 1984).

This is exactly such a case. *See generally* Dkt. 35. The case was originally filed in federal court. Dkt. 1. Plaintiff's claim is for less than the jurisdictional amount. Dkt. 1 ¶ 4.10.

Defendants have not objected to the Court's exercise of jurisdiction. *See generally* Dkt. 35. Rather, they have urged the Court to retain jurisdiction. *See generally id.* And Defendants' compulsory counterclaims bring the amount in controversy over the jurisdictional threshold. *Id.* at 3. The amount in controversy requirement is satisfied.

The diversity requirement is also satisfied. UFCC is a wholly owned subsidiary of Progressive Commercial Holdings, Inc., a private company. Dkt. 4 at 1. UFCC is an Ohio corporation with its principal place of business in Ohio, *id.* at 2, while Defendants are each Washington-based companies and individuals, *see* Dkt. 5; Dkt. 7; Dkt. 35 at 1–2; Dkt. 36. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). There is complete diversity of citizenship between the opposing parties. *See* 28 U.S.C. § 1332(c); *Johnson*, 437 F.3d at 899.

Because the Court is sitting in diversity, substantive claims are governed by state law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

**B.    Summary Judgment Standard**

On cross-motions for summary judgment, each motion "must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978)). It is "well-settled in this circuit and others that the filing of cross-motions for summary judgment, both parties asserting that there are no uncontested issues of material fact, does not vitiate the court's responsibility to determine whether disputed issues of material fact are present." *Id.*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281

F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the initial burden of "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323.

## C.    Default Judgment Standard

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure. The Rule authorizes the Court to enter default judgment against a party that fails to appear or otherwise defend in an action. Fed. R. Civ. P. 55. In deciding motions for default judgment, courts take "'the well-pleaded factual allegations' in the complaint 'as true,' 'except those relating to the amount of damages.'" *Rozario v. Richards*, 687 F. App'x 568, 569 (9th Cir. 2017) (first quoting *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007); then quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (internal citations omitted)); Fed. R. Civ. P. 8(b)(6). The court also does not accept the truth of statements in the complaint that amount to legal conclusions. *DIRECTV, Inc.*, 503 F.3d at 854. "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

The "starting point is the general rule that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782

F.2d 1470, 1472 (9th Cir. 1986). Courts weigh the following factors in deciding motions for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72; *see NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616–17 (9th Cir. 2016) (suggesting that district courts "weigh" the *Eitel* factors). District courts' decisions on motions for default judgment are discretionary. *See NewGen, LLC*, 840 F.3d at 616 ("We review . . . the grant of a default judgment for abuse of discretion."). Failure to establish the second and third factors is dispositive and requires denial of the motion. *See Cripps*, 980 F.2d at 1268 (vacating default judgment where "the default judgment [was] legally insupportable"); *United States ex rel. Lesnik v. Eisenmann SE*, No. 16-CV-01120-LHK, 2021 WL 4243399, at *11 (N.D. Cal. Sept. 17, 2021) ("failure to satisfy the second and third *Eitel* factors is sufficient to deny a motion for default judgment").

## IV.    DISCUSSION – SUMMARY JUDGMENT

### A.    Interpretation of Insurance Policies Under Washington Law

In Washington, interpretation of the "four corners" of an insurance policy "is a question of law, in which the policy is construed as a whole and each clause is given force and effect." *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (Wash. 2002); *see also Vision One, LLC v. Phila. Indem. Ins. Co.*, 174 Wash.2d 501, 512, 276 P.3d 300 (2012). Insurance policies should be given a "fair, reasonable, and sensible construction," interpreted as they would be by the average person purchasing insurance. *Gardens Condo. v. Farmers Ins. Exch.*, 2 Wn.3d 832, 839, 544 P.3d 499, 502 (Wash. 2024) (quoting *Overton*, 145 Wn.2d at 424). Terms defined in a policy are construed as defined and undefined terms are given their "ordinary and common

meaning." *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 424, 932 P.2d 1244 (Wash. 1997). "An ambiguity exists only 'if the *language on its face* is fairly susceptible to two different but reasonable interpretations.'" *Kish v. Ins. Co. of N. Am.*, 125 Wn.2d 164, 171, 883 P.2d 308 (Wash. 1994) (emphasis in original) (quoting *Wash. Pub. Util. Dists.' Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam Cnty.*, 112 Wn.2d 1, 11, 771 P.2d 701 (Wash. 1989)).

The party claiming there is insurance coverage has the burden of proving its loss falls within the scope of the policy. *Corliss Condo. Owners Ass'n v. Nat'l Sur. Corp.*, 631 F. Supp. 3d 942, 946 (W.D. Wash. 2022). In contrast, the insurer denying coverage based on an exclusion "bears the burden of showing [the] exclusion applies." *Id*. Exclusions are construed strictly against the insurer because "exclusions from insurance coverage are contrary to the fundamental protective purpose of insurance." *Vision One, LLC*, 174 Wn.2d at 512 (quoting *State Farm Fire & Cas. Co. v. Ham & Rye LLC*, 142 Wash. App. 6, 13, 174 P.3d 1175 (2007)). Insurance policies are liberally construed to provide coverage wherever possible. *W. Nat'l Assurance Co. v. Shelcon Constr. Grp., LLC*, 182 Wash. App. 256, 261, 332 P.3d 986 (2014).

## B.     The insurance contract must be construed as a whole.

As noted above, in determining whether a particular loss is covered by an insurance policy, the insured first bears the burden of showing that the loss falls within the policy's coverage. *State Farm Fire & Cas. Co.*, 142 Wash. App. at 13. "The scope of the policy's coverage is . . . distinct from the issue of causation." *Sunbreaker Condo. Ass'n v. Travelers Ins. Co.*, 79 Wn. App. 368, 374, 901 P.2d 1079 (1995). Defendants Roadmax and Grigoryan argue that, regardless of the scope of coverage under the Refrigeration Breakdown Endorsement, the clause can be separated or considered apart from the other contract provisions, specifically the Motor Truck Cargo Liability Endorsement. Dkt. 26 at 4. This argument is unavailing.

Washington law requires that an insurance policy be construed as a whole. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 434, 545 P.2d 1193, 1194–95 (1976) ("In construing the language of an insurance contract, the entire contract is to be construed together for the purpose of giving force and effect to each clause."). "A policy is considered as a whole so that the court can give effect to every clause in the policy." *Kitsap Cnty. v. Allstate Ins. Co.*, 136 Wn.2d 567, 575, 964 P.2d 1173, 1177 (1998) (citation omitted). This applies both to "endorsements as well as to the main policy." *Id.* at 575–76 (citing *Transcon. Ins. Co. v. Washington Pub. Utils. Dist. Util. Sys.*, 111 Wn.2d 452, 462, 760 P.2d 337 (1988)).

Defendants Roadmax and Grigoryan claim that the relevant coverage terms are found in the Motor Truck Cargo Legal Liability Coverage Endorsement. Dkt. 26 at 4. They argue that the Refrigeration Breakdown Endorsement and related excluded peril—whether it would exempt coverage or not—should be read separately. *See id.* at 4, 28.

Defendants' policy includes a Motor Truck Cargo Liability Endorsement. Dkt. 25-5 at 30. The provision explains that UFCC will pay for direct physical loss to covered property during transit, subject to several exclusions. *Id.* Defendants' policy also includes the Refrigeration Breakdown Endorsement, which "modifies" the Motor Cargo Endorsement.

> This endorsement modifies the Motor Truck Cargo Legal Liability Coverage Endorsement. Except as specifically modified by this Refrigeration Breakdown Coverage Endorsement, all provisions of the Motor Truck Cargo Legal Liability Coverage endorsement apply.
> . . .
> **INSURING AGREEMENT**
>
> The following is added to the Insuring Agreement:
>
> Subject to the Limit of Liability, if you pay the premium for the Refrigeration Breakdown Coverage endorsement, we will pay for your legal liability for direct physical loss to covered property, caused by spoilage or change in temperature, resulting directly from the sudden and accidental breakdown of refrigeration or heating units on an insured auto.

Dkt. 25-5 at 47–48; Dkt. 29 at 3.

The Refrigeration Breakdown Endorsement amends the standard Motor Cargo Endorsement. It replaces excluded peril "g" as written in the standard policy with a slightly different excluded peril "g":

> Under the definition of "covered peril", Excluded Peril "g." is deleted and replaced by:
>
> g. Breakdown, Temperature, Humidity
>
> > (i) Humidity, dampness, dryness, or changes in or extremes of temperature, other than such loss caused by the sudden and accidental breakdown of refrigeration or heating units on the insured auto; or
> >
> > (ii) Mechanical or electrical breakdown or failure, other than the sudden and accidental breakdown of refrigeration or heating units on the insured auto. However, this Excluded Peril does not apply to loss caused by a fire or explosion if such fire or explosion would be covered under this endorsement.

Dkt. 25-5 at 47–48; *see also* Dkt. 29 at 4 ("As a result of the above, the Refrigeration Breakdown Insuring Agreement is expressly added to the Motor Cargo Endorsement. . . . excluded peril (g) of the Motor Cargo Endorsement is deleted and replaced by the above referenced exclusion.").

By its very language, the Refrigeration Breakdown Endorsement amends the Motor Truck Cargo Liability Endorsement. Thus, reading the contract as a whole, the Refrigeration Breakdown Endorsement and related exclusion (g) modify the full policy, including the Motor Truck Cargo Liability Endorsement. *See Morgan*, 86 Wn.2d at 434. Defendants cannot argue that they do not seek coverage under the "additional coverage provided by the Refrigeration Breakdown Coverage Endorsement" and instead "seek[] coverage under the Motor Truck Cargo Legal Liability Coverage Endorsement." Dkt. 26 at 28. For Defendants' loss to be insured, it must be covered by the policy and it must not fall into one of the policy's exceptions.

**C.      The Defendant insureds have shown that the loss is covered by the policy.**

UFCC argues that Defendants' loss falls under the Refrigeration Breakdown Endorsement and its modified excluded peril g. Dkt. 23 at 10–14; Dkt. 29 at 4–9. Specifically, Defendant maintains that "the Refrigeration Breakdown Coverage Endorsement contains an additional grant of coverage for losses caused by spoilage or change in temperature, but only if those losses are directly caused by the sudden and accidental breakdown of a refrigeration unit." Dkt. 23 at 11. Because "there was no sudden or accidental breakdown of the refrigeration unit" here, UFCC claims that Defendants' losses are not covered under the policy. *Id.*

In response, Defendants argue that the loss was caused by operator negligence, a covered peril, rather than by a change in or an extreme of temperature, an excluded peril. Dkt. 26 at 15. Defendants maintain that operator negligence is a covered peril under the policy. *Id.* at 16. The Court agrees.

The UFCC Policy covers "any external risks of direct physical loss . . . except those listed . . . as Excluded Perils." Dkt. 25-5 at 31. The policy does not define "external risks." *See id.* 6–9. The Ninth Circuit has held that "a cause is external if damage which arises from it does not result wholly from an inherent defect in the subject matter or from the inherent deficient qualities, nature and properties of the subject matter." *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 814 (9th Cir. 2019) (cleaned up); *see also Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC*, 200 Wn. 2d 315, 328, 516 P.3d 796, 804 (2022) (similar).

Applied here, the Court finds that driver or operator negligence is a covered peril under the policy. The policy is an "all-risk" policy. *See* Dkt. 25-5 at 31 ("any external risk"). All-risk insurance is a special type of insurance extending to risks not explicitly included in the policy. *Marie Walker v. State Farm Fire and Cas. Co.*, No. 2:24-CV-00048-MKD, 2025 WL 35966, at *4 (E.D. Wash. Jan. 6, 2025) ("All-risk policies cover all possible risks of loss except for risks

that are specifically excluded."). It generally allows recovery for all "fortuitous" losses, unless the policy contains an exclusion expressly excluding the loss from coverage. 20 A.L.R.7th Art. 3 (Originally published in 2017).

In *Standard Structural Steel*, relied on by both the Ninth Circuit and Washington Supreme Court, a Connecticut district court found that an insured's negligence in constructing machinery contrary to provided specifications was an "external cause" under the insured's all-risk policy. *Seattle Tunnel Partners*, 200 Wn. 2d at 328 (discussing *Standard Structural Steel Co. v. Bethlehem Steel Corp.*, 597 F. Supp. 164, 194 (D. Conn. 1984)). Other Courts have similarly held that operator negligence is a covered external cause under an all-risk policy. *See, e.g.*, *Associated Engineers, Inc. v. Am. Nat. Fire Ins. Co.*, 175 F. Supp. 352 (N.D. Cal. 1959) (applying California law) (finding coverage under an all-risk policy for broken pipes in a sewage system the insured was constructing, where the entire loss was caused by negligence on the part of the insured and its employees); *United States for use & benefit of Contractor's Equip. Supply Co. v. TK Constr., US, LLC*, No. 1:14-CV-00134-REB, 2017 WL 2805491, at *4 (D. Idaho June 28, 2017) (concluding that, where mechanical breakdown resulted from a negligent act, "which otherwise is a covered peril, rather than the cause of a loss, then a mechanical breakdown exclusion does not bar coverage."); *Rust Tractor Co. v. Consol. Constructors, Inc.*, 86 N.M. 658, 1974-NMCA-096, 526 P.2d 800 (Ct. App. 1974) (holding that engine breakdown because of the negligent failure of a lessee to maintain the proper oil level was an external cause insured against under the lessor's all-risk policy despite a policy exclusion confined to mechanical breakdown or failure).

As Defendants point out, "loss due to driver negligence 'does not result wholly from an inherent defect'" in the covered property. Dkt. 26 at 16. Rather, "driver negligence is a 'fortuitous' occurrence[.]" *Id.* And UFCC does not seem to disagree. In both its motion for

summary judgment and its reply to Defendants' opposition brief, UFCC does not argue that driver negligence is not a covered peril. *See generally* Dkt. 23, Dkt. 29. Thus, to the extent that Defendants' loss was caused by driver negligence, the loss stemmed from a covered peril. Defendants have met their preliminary burden in showing that their loss falls within the scope of the policy's insured losses. *Corliss Condo. Owners Ass'n*, 631 F. Supp. at 946.

**D.    Defendants' loss is not an excluded peril.**

*1.    The term temperature in the exclusion is ambiguous.*

UFCC now "bears the burden of showing an exclusion applies" to deny coverage. *Id.* "Because 'exclusions from insurance coverage are contrary to the fundamental protective purpose of insurance,' [Washington courts] construe exclusions strictly against the insurer." *Id.* (quoting *Vision One, LLC*, 174 Wn.2d at 512). If a term is ambiguous, it will be construed against the insurer. *McDonald Indus. v. Rollins Leasing Corp.*, 95 Wn.2d 909, 913, 631 P.2d 947 (Wash. 1981) ("It is fundamental that ambiguities in the policy must be construed against the insurer and in favor of the insured. This rule applies with added force in the case of exceptions and limitations to the policy's coverage.").

A court cannot create ambiguity. *Kut Suen Lui v. Essex Ins. Co.*, 185 Wn.2d 703, 712, 375 P.3d 596, 600 (2016), as amended on denial of reconsideration (Aug. 15, 2016). Policy language "is ambiguous if it is susceptible to two different but reasonable interpretations." *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Ruiz*, 134 Wn.2d 713, 722, 952 P.2d 157 (1998)).

Defendants maintain that the term "temperature" is ambiguous because it refers to "outside temperature," not "inside temperature," and "certainly not the 'temperature of the covered property.'" Dkt. 26 at 20. In response, UFCC argues that the "endorsement unambiguously governs temperature in the specific context of refrigeration control, providing coverage only for spoilage directly caused by a sudden and accidental breakdown of the

refrigeration unit." Dkt. 29 at 7. UFCC points to language in the exclusion that excluded perils include "[h]umidity, dampness, dryness, or changes in or extremes of temperature, other than such loss caused by the sudden and accidental breakdown of refrigeration or heating units on the insured auto." *Id.* (quoting Dkt. 25-5 at 47–48). UFCC thus claims that the endorsement "limits the meaning of 'temperature' to the refrigeration unit's operational setting, removing any reasonable interpretation that it could apply to outside or ambient temperatures." *Id.*

Several district courts have disagreed. Defendants point to *Old Town Canoe Co. v. Continental Causality Co.*, No. CIV. 05-25-B-W, 2005 WL 2674902 (D. Me. Oct. 20, 2005) as one such case. Dkt. 26 at 20–21. In *Old Town Canoe*, the policy contained an exclusion for:

> Dampness or dryness of atmosphere, extremes of temperature, changes of temperature, decay, deterioration, smog, shrinkage, evaporation, contamination, mold, bacteria, virus, fungus, corrosion, erosion, rust, wet or dry rot, marring or scratching, loss of weight, change in flavor, color, texture, or finish, unless such loss or damage is caused directly by perils not otherwise excluded.

2005 WL 2674902, at *2 (cleaned up). The court, examining the policy, concluded that the term temperature was ambiguous. The court explained:

> If asked: "What is the temperature?", the natural response would be to give the outside temperature and only upon clarification to give the inside temperature. The term, "temperature", from a lay perspective, has an irreducible ambiguity and to the extent it does not, it commonly refers not to the temperature inside a building, but to the temperature outside.

*Id.* at *3. The court concluded that the insurer "could easily have eliminated this inherent ambiguity by drafting the exclusion to answer the natural question or by defining 'temperature' to do so." *Id.*

And the *Old Town Canoe* court was not alone. *Id.* at *3 ("The courts that have considered the temperature exclusion have, almost without exception, concluded that there is ambiguity in the term, which must be interpreted against the insurer."). In fact, the court pointed to cases dating to 1965 that highlighted the ambiguity of the term. *Id.* at *3 n. 6 (discussing *Aetna Ca. &*

*Sur. Co. v. Yates*, 344 F.2d 939, 940–41 (5th Cir. 1965); *see also Wyatt v. Northwestern Mut. Ins. Co.*, 304 F. Supp. 781, 783 (D. Minn. 1969) (discussing that similar policies are intended to prevent against coverage of widespread natural disasters). More recently, in *St. Paul Fire & Marine Insurance v. Gen. Injectables*, a court in the Western District of Virginia, addressing a similar exclusion, held that the word "temperature" was ambiguous. No. CIV.A.98–07370R, 2000 WL 270954, *7 n. 7 (W.D.Va. Mar. 3, 2000). The court explained: "Reasonably interpreted, this provision would likely only apply to losses due to changes in weather, not changes in temperature due to the interruption of power to a refrigeration unit." *Id.*

In *Worldwide Sorbent Prods., Inc. v. Invensys Sys., Inc.*, yet another court concluded, "the language of the temperature exclusion is ambiguous because 'changes in or extreme of temperature' could reasonably be read to refer only to ambient temperatures (weather) and not artificially created temperatures inside of ovens or other devices." No. 1:13-CV-252, 2014 WL 12597394, *10 (E.D. Tex. July 31, 2014), judgment entered sub nom. *Worldwide Sorbent Prods., Inc. v. Travelers Lloyds Ins. Co.*, No. 1:13-CV-252, 2014 WL 12597392 (E.D. Tex. Sept. 10, 2014). And in *Ash Grove Cement Co. v. Employers Ins. of Wausau*, the parties disputed whether an exclusion for "changes of temperature" applied to the artificially created temperature within a baghouse. 513 F. Supp. 2d 1200, 1203 (D. Kan. 2007), vacated in part on other grounds, 520 F. Supp. 2d 1199, 1200 (D. Kan. 2008). The court there found the exclusion ambiguous because "the term 'changes in temperature' could be understood, in the plain and ordinary sense, to refer to outside temperature[.]" *Id.* at 1213.

While none of these cases are controlling, this Court finds them persuasive. The term and phrasing of exclusion g are ambiguous. A reasonable person reading the clause could conclude that the exclusion prevents coverage of loss caused by natural changes in or extremes of outside

temperature. *See* Dkt. 25-5 at 47–48; *see also St. Paul Fire & Marine Ins.*, 2000 WL 270954, *7 n. 7.

UFCC does try to distinguish the policy in *Old Town Canoe* from the one here, pointing to its more expansive coverage of less nature-based causes of damage. Dkt. 29 at 7; *Old Town Canoe*, 2005 WL 2674902, at *2 ("marring or scratching"). The *Old Town Canoe* court did note this difference, calling the exclusion an "odd amalgam of seemingly unrelated events" which only served to "increase[] its inherent ambiguity." *Id.* at *2. But the court, in a portion of the analysis not quoted by UFCC, explains that the over inclusiveness of the provision "supports" its conclusion. *Id.* The conclusion did not hinge on the exclusion's breadth. Rather, its expansive reach only "increase[d]" the exclusion and the term's inherent ambiguity.

Thus, this Court concludes that the term "temperature" in exclusion "g" is ambiguous and should be construed against UFCC. *See Vision One LLC*, 174 Wash. 2d at 512. If temperature is construed to mean outdoor temperature, excluded peril g does not apply. As Defendants point out, "[n]o party alleges that the loss was caused by the outdoor temperature." Dkt. 26 at 23. This would mean that no party could rely on exclusion g to determine coverage. And UFCC has the burden to show that the exclusion applies.

**E.    Defendants' loss was not caused by an excluded peril.**

Even if the Refrigeration Breakdown Endorsement and exclusion g were construed to encompass the temperature setting within the truck, the loss would still be covered by the policy because the *cause* of the loss—the operator's error—was a covered peril. Washington law follows the efficient proximate cause rule: where a peril specifically insured against sets other causes into motion which, in an unbroken sequence, produce the result for which recovery is sought, the loss is covered, even though other events within the chain of causation are excluded from coverage. *Xia v. ProBuilders Specialty Ins. Co. RRG*, 188 Wn.2d 171, 182–83, 400 P.3d

1234 (Wash. 2017) (internal quotations and citation omitted); *see also Vision One, LLC*, 174

Wn.2d at 519 ("The efficient proximate cause rule applies only when two or more perils combine

in sequence to cause a loss and a covered peril is the predominant or efficient cause of the

loss.").

 "The efficient proximate cause rule operates as an interpretive tool to establish coverage

when a covered peril sets other causes into motion which, in an unbroken sequence, produce the

result for which recovery is sought." *Vision One, LLC*, 174 Wn.2d at 519. "[T]he rule has broad

application" and is not "limited to any one particular type of insurance policy." *Xia*, 188 Wn.2d

at 183.

 The parties do not dispute that the loss was caused by Defendant Sharif's error when he

set the refrigerator temperature. Dkt. 26 at 15 (quoting Dkt. 23 at 13) ("[UFCC] asserts, and

Roadmax inc. agrees, that "the sole cause of the spoilage was the driver's operational error."). As

Defendants characterize it, Sharif's failure to follow the refrigeration instructions "initiated a

sequence of perils [but] driver negligence, a covered peril, came first." *Id.* at 27. In its opening

brief, UFCC agrees, "there was no equipment failure in this case—just human error in operating

the refrigerator unit." Dkt. 23 at 12. In fact, UFCC repeats this sentiment several times. *See id.* at

11 ("In this case, there was no sudden or accidental breakdown of the refrigeration unit. . . .

[T]he refrigeration unit in the truck was set to 30F, which was well above the required

temperature range, leading to the spoilage of the cargo."); *id.* at 13; ("However, in the present

case, there is no chain of events stemming from a covered peril; the sole cause of the spoilage

was the driver's operational error."); *id.* at 14 ("[T]he spoilage was caused by Sharif's

operational error in setting the wrong temperature, not by any mechanical failure."). But UFCC

maintains that *this type* of operational error is excluded. The fact that spoilage was caused by

operational error is why UFCC concluded that "no 'sudden and accidental' breakdown occurred,

the UFCC Policy's Refrigeration Breakdown Coverage Endorsement applies, and coverage is not available." *Id.*

UFCC urges the Court to "analyze the efficient proximate cause as the 'predominate cause.'" Dkt. 29 at 10. Pointing to *Graham v. Public Employees Mutual Insurance Company*, UFCC quotes, "[i]t is the efficient or predominant cause which sets into motion the chain of events producing the loss which is regarded as the proximate cause, not necessarily the last act in a chain of events." 98 Wash. 2d 533, 538, 656 P.2d 1077, 1081 (1983) (citations omitted). UFCC then explains that "the dog food being transported at the incorrect temperature is the predominant cause of the loss . . . [and] potential negligence is anticipated by exclusion (g)." Dkt. 29 at 10. Defendants maintain that exclusion g, in only allowing for losses caused by "the sudden and accidental breakdown of refrigeration unit[s]," exempts all other temperature related losses, even those caused by driver error. *Id.*

"As a general rule, the determination of efficient proximate cause of a loss is a question of fact for the factfinder, unless the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion." *Churchill v. Factory Mut. Ins. Co.*, 234 F. Supp. 2d 1182, 1186 (W.D. Wash. 2002) (citing *Graham v. PEMCO*, 98 Wn.2d 533, 539, 656 P.2d 1077 (1983)). The efficient proximate cause rule is applied only after determining "(1) which single act or event was the efficient proximate cause of loss and (2) that the efficient proximate cause of the loss is a covered peril." *Id.* at 1187 (citing *McDonald*, 119 Wn.2d at 732). A policy exclusion only prevents coverage if it excludes the efficient proximate cause of the loss. *Id.* If the efficient proximate cause is a covered peril, then the exclusions will have no effect. *Id.*

The parties do not dispute that Sharif set the refrigeration unit to the wrong temperature, and they do not dispute that this mistake was the proximate cause of Defendants' loss. Dkt. 26 at 15 (quoting Dkt. 23 at 13). There is no question of fact for the jury to decide. And driver

negligence is an "external risk of direct physical loss" under the policy. Dkt 26 at 16. Thus, even if the truck's internal temperature setting was an excluded peril, that excluded peril was set in motion by a covered peril—driver negligence—that was the efficient proximate cause of the loss.

The Court concludes that Defendants have met their burden to show that their loss was a covered peril under the policy. And UFCC has failed to meet its burden to show that the peril falls into an exclusion. The Court thus DENIES UFCC's Motion for Partial Summary Judgment on the issue of coverage and GRANTS Defendant Roadmax and Grigoryan's Cross-Motion for Partial Summary Judgment on the same issue.

## V.    DISCUSSION – DEFAULT JUDGMENT

### A.    Jurisdiction

The Court first examines its jurisdiction when evaluating a motion for default judgment. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). UFCC brings its claims against Defendants Sharif and Amas Trucking under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act (DJA) provides:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Under the DJA, a "lawsuit seeking federal declaratory relief must first present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998) (citing *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 239–40 (1937)). The lawsuit "must also fulfill statutory jurisdictional prerequisites[,]" such as the requirements for diversity jurisdiction. *Id.* at 1222–23. Once the constitutional and statutory requirements have been met, the court must "be satisfied that entertaining the action is appropriate." *Id.* at 1223.

This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), based on the complete diversity of the parties and the amount in controversy. As explained above, *supra* Section III.A., the parties have met the requirements for diversity jurisdiction under *Fenton*, 748 F.2d at 1359. But Defendants Roadmax and Grigoryan dispute whether there is a case or controversy for the Court to resolve against Amas Trucking. Dkt. 26 at 28. They explain that "[g]oing beyond the actual coverage dispute between Roadmax Inc. and [UFCC], [UFCC] also asks this Court to grant declaratory relief regarding the Auto Liability coverage available on the . . . Policy against Amas Trucking LLC. However, to date, no one has asked [UFCC] to extend coverage under the Auto Liability coverage." Dkt. 26 at 28. And they point out that no suit has been filed against Amas "that could trigger [UFCC's] obligations under such coverage." *Id.* Thus, they conclude "there is no current case or controversy for this court to resolve" against Amas. *Id.* UFCC responds that Roadmax lacks standing to bring this argument on behalf of Amas, *see* Dkt. 29 at 10, but the Court has an independent obligation to examine its own jurisdiction.

An action for declaratory relief satisfies the statutory standing requirements of the DJA if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "A dispute between an insurer and its insureds over the duties imposed by an insurance contract satisfies Article III's case and controversy requirement." *Zurich Am. Ins. Co. v. Philpot*, No. 08CV1588 BEN (NLS), 2009 WL 10671921, at *4 (S.D. Cal. Sept. 8, 2009) (quoting *Gov't Emps. Ins. Co.*, 133 F.3d at 1222 n.2).

This case satisfies both the statutory requirements of the DJA and the constitutional requirements of Article III: the parties dispute whether the insurance contract covers the loss suffered by Defendants. *See Zurich Am. Ins. Co.,* 2009 WL 10671921, at *4 (similar). It is of no issue that the dispute appears to be, primarily, between Roadmax and UFCC. Amas is the one who holds the insurance policy with UFCC. Dkt. 25-5 at 2. Roadmax subcontracted with Amas to fulfill Roadmax's contract with H&M Bay for shipment of the dog food. Dkt. 25-4 at 2–3; Dkt. 23 at 4. Roadmax now claims that UFCC is liable for Roadmax's loss—a loss that would be covered by Amas's UFCC policy. Dkt. 25-5 at 2. Thus, the Court finds Roadmax's argument unpersuasive. The Court has jurisdiction.

Still, the Court finds that UFCC is not entitled to a default judgment against Defendants Amas and Sharif. In *Frow v. De La Vega*, the Supreme Court "cautioned that in certain circumstances, the court should not enter a default judgment against a defendant which is, or likely to be, inconsistent with a judgment on the merits as to the remaining defendants." *Hutchings v. Snell & Co., LLC*, No. C-09-4680 JCS, 2010 WL 1980165, at *7 (N.D. Cal. Apr. 23, 2010), report and recommendation adopted sub nom. *Hutchins, v. Snell & Co., LLC*, No. C 09-04680 JSW, 2010 WL 1980162 (N.D. Cal. May 17, 2010) (discussing *Frow v. De La Vega*, 15 Wall. 552, 82 U.S. 552, 21 L.Ed. 60 (1872)); *see also Emp. Painters' Trust v. Cascade Coatings*, No. C12–0101 JLR, 2014 WL 526776, at *3 (W.D. Wash. Feb. 10, 2014) ("Supreme Court and Ninth Circuit precedent prohibit default judgment where a default judgment against one defendant could be inconsistent with a judgment on the merits in favor of other defendants."). Though in *Frow* the issue was one of joint liability, *Frow* "has [since] been extended to situations . . . where a default judgment against one defendant would be inherently inconsistent with a judgment entered against a similarly situated co-defendant." *Id.* (citing *In re First T.D. & Invest., Inc.*, 253 F.3d 520, 531–32 (9th Cir. 2001)). "Where *Frow* applies, it would

be an abuse of discretion to enter a default judgment against some but not all defendants prior to adjudication of the claims against answering defendants." *Shanghai Automation Instr. Co. v. Kuei*, 194 F. Supp. 2d 995, 1008 (N.D. Cal. Nov. 19, 2001)

Here, it would be "be incongruous and unfair" to enter default judgment against Defendants Amas and Sharif. *In re First T.D. & Inv.*, 253 F.3d at 532. UFCC asks that the Court enter the following:

> With regard to any and all claims arising out of the loss that forms the basis of the instant action, Defendants Amas, Sharif, Grigoryan, and Roadmax are not entitled to coverage under the policy issued by UFCC to Amas (Policy No. 03886005-1, "the UFCC Policy"). Defendant Sharif's failure to maintain the appropriate temperature in the trailer, which was set at or slightly below 30 degrees Fahrenheit instead of the required 0 to -10 degrees Fahrenheit, resulted in the spoilage of the cargo. Since the UFCC Policy expressly excludes coverage for damage caused by "humidity, dampness, dryness, or changes in or extremes of temperature" unless directly caused by the sudden and accidental breakdown of refrigeration units, UFCC owes no duty to defend or indemnify either Defendant Sharif or Defendant Amas Trucking LLC. As such, no coverage is available for the December 30, 2023 loss under the UFCC Policy.

Dkt. 23 at 14–15. The judgment against Amas and Sharif would thus conclude the very opposite of what this Court found above: that the UFCC policy does cover Defendants' loss. Ruling that the policy does not cover Amas and Sharif's losses, but does cover those of Roadmax, is inconsistent. For this reason, UFCC's motion for default judgment is DENIED.

## VI.    CONCLUSION

For the reasons explained above, UFCC's motion for partial summary judgment and default judgment, Dkt. 23, is DENIED. Defendants Roadmax and Grigoryan's cross-motion for partial summary judgment, Dkt. 26, is GRANTED.

Dated this 10th day of January, 2025.

Tiffany M. Cartwright
United States District Judge